# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

SABRINA GALLARDO,                           Case No.  1:12-cv-1406-SKO

            Plaintiff,                **ORDER ON PLAINTIFF'S COMPLAINT**

     v.                                (Doc. No. 1)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

_____/

## INTRODUCTION

      Plaintiff Sabrina Gallardo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act.  42 U.S.C. § 405(g).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 9, 10.)

**BACKGROUND**

Plaintiff was born in 1957 and previously worked as a bookkeeper for the W Hotel in San Francisco from 1999 to 2009. On February 26, 2010, Plaintiff applied for DIB alleging disability since January 15, 2009, due to tendinitis, trigger finger, carpal tunnel, wrist pain, arthritis, and limited use of her hands, wrists, and arms.  (AR 118-24, 151-52.)

**A.      Relevant Medical Evidence**

In 2005, Plaintiff began having bilateral elbow distress and saw Jay Wani, M.D, for examination.  (AR 239, 414-22.)  Plaintiff underwent multiple injections of her elbows.  (AR 239.) Dr. Wani referred Plaintiff to Harish P. Porecha, M.D., a neurologist who performed electrophysiological testing.  (AR 423-24.)  Dr. Porecha found a slight worsening of Plaintiff's carpal tunnel syndrome in her right wrist, and a slight conduction delay in her right elbow in the ulnar nerve.  (AR 423.)  He recommended a referral to an orthopedic surgeon for an injection in her right elbow, and recommended she wear braces on her right wrist and elbow to prevent further tennis elbow.  (AR 424.)

Subsequently, Dr. Wani referred Plaintiff to Wesley Kinzie, M.D., an orthopedic surgeon, as suggested by Dr. Porecha.  (AR 233.)  Dr. Kinzie examined Plaintiff on June 28, 2005, with regard to chronic right-sided lateral epicondylitis.  (AR 233.)  While Plaintiff was tender over the lateral aspect of her right elbow, she had a full range of motion, she was neurovascularly intact, and her x-rays were within normal limits.  Dr. Kinzie administered ejections, and there was some improvement noted.  (AR 233, 239.)

Plaintiff returned to Dr. Kinzie in March 2006, complaining of recurrent right elbow pain, but she reported she had done well since the June 2005 shots.  (AR 232.)  Dr. Kinzie again administered shots into the right lateral epicondyle area.  (AR 232.)   In May 2007, Plaintiff returned to Dr. Kinzie complaining of recurrent pain in her right elbow and also at the base of her thumb.   (AR 231.)   Dr. Kinzie once again administered some injections of Celestone and Lidocaine, and recommended that Plaintiff take Aleve twice daily.  (AR 231, 239.)

In April 2008, Plaintiff reported pain in her left hand and wrist to Dr. Kinzie, who referred her for x-rays, which returned negative findings.  (AR 230, 416.)  Dr. Kinzie administered an

1   injection into Plaintiff's left wrist.  (AR 230.)  In June 2008, Dr. Kinzie examined Plaintiff for pain

2   in her hands, especially at the base of her right thumb.  (AR 229.)  It was determined she had

3   arthritis at the base of her thumb with deQuervain's syndrome.   (AR 239.)   Dr. Kinzie

4   administered another Lidocaine shot into Plaintiff's right thumb and indicated he would see her for

5   follow-up in three weeks if there was no improvement.  (AR 229.)

6   On June 25, 2008, Dr. Kinzie again examined Plaintiff for triggering and locking of the left

7   long (ring) finger.  (AR 228.)  He noted her right hand had improved, and although she had some

8   triggering in her right thumb, there was no pain.  (AR 228.)  He administered another Lidocaine

9   injection in the left long finger.  At a follow-up appointment on July 23, 2008, bilateral trigger

10  thumbs were noted.  (AR 227, 239.)  Plaintiff underwent a right trigger thumb release and a right

11  long finger release.  (AR 225-26.)  In September 2008, the left deQuervain's and trigger thumb

12  release were performed.  (AR 225, 240.)

13  In February 2009, Plaintiff had a second right long finger trigger release (AR 224), and in

14  April 2009, she had a left long trigger finger release (AR 216).  Continued inflammation was

15  observed in May 2009 (AR 212), she was prescribed anti-inflammatory medication, a progressive

16  home exercise program, and a recommendation was made that she be kept temporarily disabled

17  for purposes of Worker's Compensation benefits while the etiology of her inflammation was

18  investigated (AR 212, 240).  In July 2009, Dr. Kinzie again observed continued inflammation, and

19  made the same recommendation for treatment indicating that he would follow-up with Plaintiff in

20  about two months.  (AR 211.)

21  On September 1, 2009, Dr. Kinzie indicated that Plaintiff was still experiencing bilateral

22  inflammation of both upper extremities and hands, and she was obtaining a consultation with a

23  rheumatologist to see if she had an underlying inflammatory condition.  (AR 210.)  He opined that

24  she could not continue in her line of work that required repetitive use of her hands.  (AR 210.)  He

25  continued his prescription for anti-inflammatory medication and indicated he would wait for the

26  rheumatologist's report.  (AR 210.)

27  On September 29, 2009, Plaintiff was seen by Karen Anne Reardon, M.D., a

28  rheumatologist who noted Plaintiff was a limited historian who had been off work since January

2009 due to her hands.  (AR 258.)  Plaintiff reported continued hand pain, the inability to write for even five minutes, and that she could not make a tight fist, though Dr. Reardon noted Plaintiff could demonstrate a tight fist easily in the clinic.  (AR 258 ("Interestingly, she is able to do hand work at home in her leisure, and make a fist when distracted, but seems unable to when witnessed.").)  Plaintiff also reported that her hands were worse in the morning, and she had to rub them or take a pain pill.  (AR 258.)  Plaintiff indicated initially that she had no other small joint problems, but then reported elbow tendonitis and chronic back pain that worsened after prolonged sitting but which took only a few steps to rectify.  (AR 258.)

On examination, Plaintiff exhibited a full range of motion in all of her joints with no appreciable tenosynovitis or triggering.  (AR 260.)  Plaintiff reported she was staying busy at home doing jigsaw puzzles and watching her grandchildren.  (AR 259.)  She also reported attending a gym where she rides a bike for 30 minutes and does crunches.  (AR 259.)  Dr. Reardon reviewed x-ray findings dated September 4, 2009, showing that Plaintiff had mild degenerative changes to some of the distal interphalangeal joints in her left hand, but her right hand revealed only normal findings.  (AR 260.)

In October 2009, Dr. Kinzie again examined Plaintiff, noting that she had an increased rheumatoid factor and CRP [C-Reactive Protein], and while she had seen a rheumatologist, Dr. Reardon, that report was not yet available for Dr. Kinzie's review.  (AR 209.)  Dr. Kinzie recommended getting the report from the rheumatologist, but due to the inflammation and pain in her hands, he felt Plaintiff could not return to her former employment and indicated his restriction "would be no repetitive use of her hands."  (AR 209.)

In February 2010, Plaintiff was seen for back pain.  She was examined by Sharon Caroline D'Souza, M.D., who recommended Plaintiff perform only light activity, avoid prolonged sitting, and take pain medication, and referred her for an x-ray.  (AR 436.)  Lumbosacral spine x-rays showed moderate degenerative disk disease at L3-4 and L4-5.  (AR 307.)

On March 1, 2010, Plaintiff was again examined by Dr. Kinzie for swelling and pain in both her hands.  (AR 236.)  Plaintiff reported that Dr. Reardon did not believe Plaintiff had rheumatoid arthritis.  (AR 236.)  However, Dr. Kinzie indicated he believed that she did have an

underlying inflammatory disorder because her rheumatoid factor was markedly elevated as was her C-Reactive Protein, and he recommended that the rheumatology area be pursued. (AR 236.) He also indicated that Plaintiff could not work with her current situation, and that she was disabled. (AR 236.)

Plaintiff was referred to Wyn Minn Lin, M.D., on March 30, 2010, who indicated the clinical findings in her hands suggested tendinitis. (AR 271-75.) Plaintiff reported to Dr. Lin that she went to the gym three days a week. (AR 271.) Dr. Lin noted a family history of rheumatoid arthritis, and advised Plaintiff to take Ibuprofen for two weeks, decrease the dose for a while, and then consider a low-dose Prednisone. (AR 240, 274.) At that time, Dr. Lin did not believe that Plaintiff had active rheumatoid arthritis. (AR 240, 274.) Dr. Lin also indicated that the February 2010 x-ray of Plaintiff's back showed mild degenerative disk disease and September 2009 x-rays of her hand showed mild degenerative changes. (AR 274.) In April 2010, Dr. Lin opined that Plaintiff suffered from tendonitis. (AR 338.)

On April 12, 2010, Plaintiff was examined by Stephen B. Berrien, M.D., as part of her Worker's Compensation claim. (AR 239-45.) He indicated that Plaintiff would be managed by an inflammatory disease specialist, and she would need to be followed by a rheumatologist or internal medicine physician and/or physical medicine physician familiar with managing tenosynovitis irritation. (AR 243.) While Dr. Berrien indicated local injections "are not out of the question," he added that Plaintiff did not require, at that time, any form of formal surgeries. (AR 243.) If Plaintiff developed any continuing triggering, Dr. Berrien felt consideration of a release would be appropriate. (AR 243.) He noted that her physical function with regard to her range of motion was "substantially improved," and she had no locking, popping, snapping, or giving way. (AR 244.) In Dr. Berrien's opinion, Plaintiff's carpal tunnel syndrome was substantially better. (AR 244.) However, he opined that, given Plaintiff's condition, she would be unable to return to her normal line of work, and she was not capable of continuing to do fine tasks such as keyboard operation. (AR 243.) Dr. Berrien also opined that Plaintiff was "impaired from doing fine repetitive hand functioning, grasping, twisting, pushing, pulling, on a regular basis." (AR 243.)

On June 2, 2010, state agency physician H. Han, M.D., reviewed the record and opined that Plaintiff could occasionally lift 20 pounds and frequently lift up to 10 pounds; and stand, walk, or sit for about six hours in an eight-hour day.  (AR 316.)  He found Plaintiff could push and pull the same amount of weight at the same frequency that she could lift and carry.  (AR 316.)  He opined she should never perform movements that required balance, and she was limited in her ability to perform gross and fine manipulation.  (AR 318.)

On June 17, 2010, state agency physician M. Farley, M.D, also reviewed Plaintiff's medical records.  (AR 325-26.)  He indicated the September 2009 exam findings of Dr. Reardon eroded Plaintiff's credibility to a certain extent regarding her pain and limitation stemming from her carpal tunnel syndrome.  Dr. Farley noted Plaintiff had reported significant limitations to Dr. Reardon, but she was able to make a fist easily at that exam and reported working jigsaw puzzles at home.  (AR 325.)  Dr. Farley felt the ability to complete jigsaw puzzles would require "good fine manipulative ability" of Plaintiff's hands.  (AR 325.)  Dr. Farley further noted that, pursuant to the April 2010 examination findings, Plaintiff did not have underlying active rheumatoid disease, but chronic tendonitis instead.  (AR 326.)  He opined Plaintiff could perform light work with manipulative limitations.  (AR 326.)

On August 11, 2010, Plaintiff was examined by Lawrence H.M. Fung, M.D.  Plaintiff reported a buzzing sensation down her right leg with some associated back pain.  (AR 363.)  Plaintiff indicated she could not stand for more than a short time or sit down for more than a few minutes.  (AR 363.)  Dr. Fung opined the degenerative disk seen at L4-5 and less so at L3-4 was likely the cause of Plaintiff's back pain; Dr. Fung recommended a trial of physical therapy and that Plaintiff consider some pain medication.  (AR 366.)

On September 29, 2010, Plaintiff underwent physical therapy with Amy M. Halley, P.T.  (AR 371-73.)  Plaintiff reported a history of lower back pain for five years, which had worsened with time.  (AR 371.)  She reported working out at the gym by walking or biking.  At home, she experienced difficulty standing; with prolonged standing the pain radiated down her right lower extremity.  (AR 371.)   She demonstrated a positive straight leg raise on the left and a positive slump test.  (AR 372.)  Plaintiff was tender to palpation with posterior/anterior mobilizations at L4

1  and into bilateral superior gluteals and left piriformis. (AR 372.) Plaintiff's left hip was also noted

2  to be tight. (AR 372.)

3      On October 8, 2010, Plaintiff was seen by Helen Chung, M.D. (AR 374-75.) Plaintiff

4  demonstrated a positive Faber test, indicative of low back pain, although a straight leg raise and a

5  crossed straight leg raise test were negative. (AR 375.) Plaintiff's lumbar flexion and extension

6  were 50% limited by pain. (AR 375.) Dr. Chung recommended that Plaintiff continue with

7  physical therapy and that she undertake a stretching and strengthening program. (AR 376.) Dr.

8  Chung noted that Plaintiff was satisfied with her current medication regime, and declined further

9  pain medication at that time. (AR 377.) If no significant improvement was made with physical

10 therapy, Dr. Chung recommended that Plaintiff consider a trial trigger point injection and an

11 injection for her sacroiliac ("SI") joint. (AR 377.)

12     Plaintiff again participated in physical therapy on October 19, 2010, and reported she was

13 performing home exercises and was otherwise doing better. (AR 378.) The physical therapist

14 noted that Plaintiff's lumbar active range of motion was within normal limits. (AR 378.) In

15 November 2010, Plaintiff reported decreased pain after treatment and that she was able to walk at

16 the gym. (AR 383.) The therapist noted many treatment goals were partially met, including that

17 Plaintiff be able to tolerate standing for 20 minutes within eight weeks; tolerate sitting and/or

18 driving for 30 minutes within 8 weeks; perform a functional squat for ADL activity and for

19 reaching into cabinets and to perform household cleaning within 10 weeks; and that she be

20 independent with a home exercise program. (AR 384.)

21     On December 27, 2010, state agency physician Jensine Wright, M.D., reviewed Plaintiff's

22 medical records. (AR 392-99.) Dr. Wright concurred with Drs. Han and Farley that Plaintiff

23 retained the ability to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds

24 frequently; and sit, stand, and/or walk about six hours in an eight-hour day. (AR 393.) Dr. Wright

25 noted that at the examination with Dr. Reardon in September 2009, Plaintiff demonstrated diffuse

26 tenderness every place touched, but all her joints had a full range of motion and there was no

27 appreciable tenosynovitis or triggering. (AR 393-94.) Dr. Wright also noted that Plaintiff

28 reported staying busy with jigsaw puzzles and attending the gym three times per week. (AR 394.)

1    Dr. Wright found it significant that Dr. Reardon[2] had noted in September 2009 that Plaintiff was

2    able to make a tight fist when distracted.  Also, Plaintiff's history of seizures was controlled by

3    Dilantin.  (AR 394.)  Dr. Wright concurred with the inconsistency noted by Drs. Han and Farley

4    that Plaintiff reported the ability to perform fine manipulation by completing jigsaw puzzles at

5    home and caring for her grandchildren.  (AR 394.)  Dr. Wright felt that Plaintiff's subjective

6    complaints exceeded her objective examination findings, and a recent examination indicated the

7    resolution of triggering with surgery.  (AR 394.)  Given these records, Dr. Wright opined that

8    Plaintiff had balancing limitations due to the increased risk that she would fall if a seizure

9    occurred; Plaintiff should be limited in any crawling activities due to pain in her hands; and

10   Plaintiff should be restricted to only frequent bilateral handling/fingering, due to prior hand

11   surgeries and a history of epicondylitis.  (AR 394-95.)  Dr. Wright also indicated that, due to a

12   history of prior bilateral carpal tunnel releases, Plaintiff should avoid sustained gripping of hand-

13   held vibratory equipment, and due to her history of seizures, she should avoid work at unprotected

14   heights and the operation of hazardous equipment such as hand held power cutting tools.

15   (AR 396.)  Dr. Wright disagreed with Dr. Kinzie's March 1, 2010, opinion that Plaintiff could not

16   work with her current situation.  Specifically, Dr. Wright felt the opinion was not supported by the

17   examination findings because Plaintiff could make a full grip when distracted, she was able to

18   complete jigsaw puzzles, and she cared for her grandchildren at home.  (AR 398.)

19         On January 13, 2011, Plaintiff was again seen by Dr. Kinzie with complaints of pain in her

20   right elbow and right ring finger.  (AR 425.)  On July 13, 2011, Dr. Kinzie completed a form

21   indicating that Plaintiff could not engage in fine manipulation with her hands, but could

22   occasionally engage in gross manipulation; could not handle papers or files or place files in a

23   cabinet at or above waist level; could not lift more than five pounds; and was experiencing and

24   reporting severe pain.  (AR 426.)

25

26

27

28   _____
     [2] Although Dr. Wright indicated it was Dr. Kinzie who noted Plaintiff could make a tight fist when distracted, this
     finding was actually contained in Dr. Reardon's September 2009 treating records.

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 54 58, 75.)  On September 14, 2011, the ALJ held a hearing.  Plaintiff testified, through the assistance of counsel, and a Vocational Expert ("VE") testified.  (AR 27-53.)

**1.     Plaintiff's Hearing Testimony**

Plaintiff was born in 1957, and she graduated from high school.  (AR 30.)  Plaintiff alleges disability beginning on January 15, 2009, due to trigger fingers, carpal tunnel syndrome, wrist pain, arthritis, and acute tendonitis.  (AR 31, 118-24, 151-52.)  She worked as a hotel bookkeeper from 1999 to 2009.  (AR 32.)  She is able to perform her own personal care, but she does not perform chores around the house.  (AR 33.)  She will cook with a crockpot, use the dishwasher, and put clothes in the washing machine, but she cannot mop or sweep or perform similar activities.  (AR 33.)  She no longer has any hobbies and she watches television all day, but she does perform some exercise by trying to move around and stretch.  (AR 34.)  The longest distance she can drive is about one mile.  (AR 34.)  She has problems sleeping and sleeps only about four hours per night on average.  (AR 34.)  She sees a doctor once or twice a month at Kaiser Permanente, and she sees a specialist, Dr. Kinzie, for her hands.  (AR 35.)  She takes Norco for pain, Xanax for stress and anxiety, and Dilantin for seizures.  (AR 35-36.)  She also takes Motrin for pain, and uses an inhaler for asthma.  (AR 36.)  She reported no side-effects from these medications. (AR 37.)  The Dilantin helps control her seizures, but she had experienced a seizure in the prior month, and had experienced a grand mal seizure three months prior to the hearing. (AR 37.)  Every year she has a grand mal seizure.  (AR 38.)

Plaintiff reported she could only walk for five minutes, sit for fifteen minutes, and lift less than five pounds.  (AR 38.)  She has pain in both her hands; if she uses a keyboard, her fingers lock and they hurt. (AR 39.)  She has pain in her elbows.  (AR 39.)  Since she left her job, she has lost 40 pounds due to stress and suffers from a lack of sleep due to pain.  (AR 40-41.)  Her dexterity is limited in her hands such that she cannot perform fine or gross manipulation; she cannot cook because she cannot grasp the spoon to stir.  (AR 42.)  Her hands are swollen, and she

1  wears wrist splints at night and sometimes during the day when the pain is excruciating.  (AR 47.)

2  　　　　In her previous job, she had to frequently alternate between sitting and standing because of

3  her back pain.  (AR 42-43.)  Recently, in the morning her hand pain was at a 10, with 10 being the

4  highest level of pain.  After medication, her pain is reduced to a six.  (AR 43.)   Even to the extent

5  that her hands were better, her back pain would prevent her from working.  (AR 48.)

6  　　　　**2.　　　The VE's Testimony**

7  　　　　The ALJ posed only one hypothetical for the VE to consider.  (AR 49-52.)  The ALJ asked

8  the VE to consider a person with the same educational and work background as Plaintiff who was

9  restricted to sitting, standing, and walking for six hours in an eight-hour day; could only

10  occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds; who could

11  frequently climb stairs; never climb ladders; frequently balance, stoop, bend, kneel, crouch; and

12  occasionally crawl.  (AR 49.)   The ALJ also indicated this individual could perform gross

13  handling and fine fingering bilaterally on a frequent basis only; and the individual must avoid

14  concentrated exposure to heights, moving machinery, and vibrations.  (AR 49.)  The VE testified

15  that such an individual could not perform Plaintiff's past work, but could perform other work

16  including that of receptionist, parking attendant, and office helper.  (AR 50-51.)

17  　　　　Plaintiff's counsel asked the VE to consider a hypothetical person with the same exertional

18  limitations as the ALJ had posed, but with additional manipulative limitations that the person

19  could perform no fine manipulation of the hands, and could only occasionally perform gross

20  handling of the hands.  (AR 51.)  The VE testified these additional limitations would preclude all

21  employment.

22  　　　　**3.　　　The ALJ's Decision Denying Benefits on October 7, 2011**

23  　　　　On October 7, 2011, the ALJ concluded that Plaintiff was not disabled.  (AR 15-22.)  The

24  ALJ determined Plaintiff's severe impairments included carpal tunnel syndrome, trigger fingers,

25  tennis elbow, tendinitis, and epilepsy.  (AR 17.)  Although Plaintiff had alleged back arthritis, the

26  ALJ found the medical evidence did not indicate the condition rose to the level of a medically

27  determinable impairment because February 2010 x-rays showed only moderate degenerative disk

28  diseases of L3-4 and L4-5.  (AR 17.)

As to assessing Plaintiff's RFC, the ALJ gave little weight to the opinion of Dr. Kinzie, but accorded persuasive weight to the opinion of state-agency physicians Drs. Han and Wright. (AR 19-20.)  Based on the opinions of these physicians, the ALJ determined that Plaintiff retained the ability to perform a wide range of light work and could sit, stand, and walk for approximately six hours in an eight-hour workday; lift and carry 20 pounds occasionally, and 10 pounds frequently; frequently climb stairs, balance, stoop, kneel, bend, and crouch; occasionally crawl, but never climb ladders; perform bilateral gross handling and fine feeling only on a frequent basis; and must avoid concentrated exposure to heights, moving machinery, and vibrations.  (AR 18.)

### 4.   Subsequent Grant of Benefits as of January 1, 2012

On February 15, 2013, Plaintiff was found disabled in connection with a subsequent application for DIB.  Plaintiff attached to her opening brief a copy of a Notice of Award letter indicating that the Commissioner had determined she was disabled as of January 1, 2012.  (Doc. 18-1.)   As an exhibit to her brief, the Commissioner attached an excerpt from the Disability Determination Explanation finding Plaintiff disabled as of January 1, 2012.  In relevant part, the determination provides the following:

> Although the Clmt was 54 YO when she was provided an MRFC for unskilled work in addition to her light RFC, we must consider borderline age as we cannot apply age mechanically.  As of age 55, the Clmt would be a med/voc allowance with MRFC limitations to unskilled work and a light RFC.  Per POMS DI 25001.001 B2, we can consider if limitations and restrictions in the RFC which affect but do not substantially erode a remaining occupational base are additional vocational adversities.  The Clmt has 11 additional limitations on her RFC as cited above that could be considered additional adversities which would allow us to infer onset prior to her turning 55 YO (12/2012).  With the 11 additional adversities, we can push onset back at least 11 full months to 01/2012.  Med/voc rule 202.06 (at attainment of age 55) would result in an allowance for Clmt.

(Doc. 23-1, Exhibit A.)

### SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

1   Instead, the Court must determine whether the Commissioner applied the proper legal standards

2   and whether substantial evidence exists in the record to support the Commissioner's findings.  *See*

3   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  "Substantial evidence is more than a mere

4   scintilla but less than a preponderance."  *Ryan v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1198 (9th

5   Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might

6   accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

7   (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must

8   consider the entire record as a whole, weighing both the evidence that supports and the evidence

9   that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a

10  specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

11  2007) (citation and internal quotation marks omitted).

12                                   **APPLICABLE LAW**

13      An individual is considered disabled for purposes of disability benefits if he or she is

14  unable to engage in any substantial, gainful activity by reason of any medically determinable

15  physical or mental impairment that can be expected to result in death or that has lasted, or can be

16  expected to last, for a continuous period of not less than twelve months.  42 U.S.C.

17  §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The

18  impairment or impairments must result from anatomical, physiological, or psychological

19  abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic

20  techniques and must be of such severity that the claimant is not only unable to do her previous

21  work, but cannot, considering her age, education, and work experience, engage in any other kind

22  of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3),

23  1382c(a)(3)(B), (D).

24      The regulations provide that the ALJ must undertake a specific five-step sequential

25  analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine

26  whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§

27  404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant

28  has a severe impairment or a combination of impairments significantly limiting her from

performing basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ

must determine whether the claimant has a severe impairment or combination of impairments that

meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart

P, App. 1.  *Id*. §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine

whether the claimant has sufficient residual functional capacity despite the impairment or various

limitations to perform her past work.  *Id*. §§ 404.1520(f), 416.920(f).  If not, in Step Five, the

burden shifts to the Commissioner to show that the claimant can perform other work that exists in

significant numbers in the national economy.  *Id*. §§ 404.1520(g), 416.920(g).  If a claimant is

found to be disabled or not disabled at any step in the sequence, there is no need to consider

subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§

404.1520, 416.920.

## DISCUSSION

**A.      The Subsequent Disability Finding Does Not Require Remand**

**1.      The Parties' Arguments**

Plaintiff asserts she was awarded DIB benefits in a subsequent benefits claim on March 10,

2013, which provided a disability onset date of January 1, 2012.  The ALJ decision in this case

was issued on October 7, 2011, "just 81 days before the subsequent favorable award."  (Doc. 18,

5:28-6:1.)  Plaintiff argues she has not changed age categories since the first denial on October 7,

2011, and the subsequent grant of benefits finding her disabled as of January 1, 2012.  Therefore,

the fact that Plaintiff was awarded benefits in a subsequent claim so close in time to the prior

denial warrants a remand so the ALJ may further evaluate whether records that formed the basis

for a finding of disability in the most recent claim may relate to this claim.  Plaintiff contends that

her subsequent, successful application for benefits is new and material evidence that warrants

remand pursuant to *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010).   (Doc. 18, 6:5-18.)

Additionally, Plaintiff asserts that the subsequent claim has triggered the Commissioner's duty to

develop the record further pursuant to *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001).

The Commissioner maintains that Plaintiff's reliance on *Luna* is misplaced because *Luna*

"did not speak to the propriety of a Court-mandated remand based on a subsequent administrative

finding of disability.  Rather, *Luna* affirmed the Commissioner's request for a voluntary remand, after the Commissioner determined the ALJ's decision was indefensible irrespective of what happened on a subsequent application and offered to reconcile the two application periods."  (Doc. 23, 16:15-21.)  The Commissioner argues *Luna* is distinguishable from this case.  In *Luna*, the Commissioner conceded ALJ error that was unrelated to the subsequent grant of benefits, and expressly agreed to consider an earlier onset date of disability on remand.  Here, unlike in *Luna*, the Commissioner does not concede that there was any ALJ error in the first denial of benefits. Moreover, the only reason Plaintiff was found disabled in the subsequent application was due to application of her borderline age, not because the ALJ's denial of her prior claim was predicated on a mis-interpretation of the evidence.

Plaintiff replies that the Commissioner's interpretation of *Luna* is "too narrow," as *Luna* stands for the proposition that in certain circumstances, an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative consideration to determine whether the favorable subsequent event should alter the initial negative outcome.  (Doc. 24, 2:5-11.)  According to Plaintiff, the subsequent finding of disability based on Plaintiff's new application is so close in proximity to the earlier denial in October 2011 that there is a possibility that the subsequent 2012 grant of benefits could potentially alter the initial unfavorable decision.  (Doc. 24, 2:11-14.)

**2.   Discussion**

In *Luna*, the claimant, Luna, applied for social security benefits alleging disability as of November 30, 2001.  632 F.3d at 1033.  After her application was denied, she requested a hearing and amended her onset date to March 26, 2003.  *Id.*  The ALJ denied Luna's claims on January 27, 2006, determining her impairments did not preclude her from sedentary work with restrictions, and concluded that she could return to her past relevant work as a screw sorter.  *Id.* at 1034.  Luna appealed the denial to the district court.  *Id.*

While that appeal was pending, Luna filed a second application for benefits, which was granted on August 20, 2007.  *Id.*  The Commissioner found Luna disabled as of January 28, 2006, one day after the date she was found not disabled based on her first application.  *Id.*

On appeal before the district court, the parties agreed the case should be remanded to the agency to reconcile the denial of benefits based on Luna's first application with the grant of benefits based on her second application.  *Id.*  The parties disagreed, however, on the terms of the remand.  *Id.*  Luna asserted the grant of benefits in response to the second application clearly indicated she was disabled for the earlier time period covered by her first application, so the proper remedy was to order benefits be paid for the earlier time period.  *Id.*  Instead, the district court granted the Commissioner's motion and remanded for further administrative proceedings to reconsider whether Luna was actually disabled during the period relevant to her first application.  *Id.*

Luna appealed the district court's order.  *Id*.  The appellate court affirmed the district court's finding that Luna's second application was new and material evidence warranting remand for further factual consideration because it was commenced at or near the time Luna was found not disabled based on her first application.  *Id.*  The appellate court was persuaded by the district court's citation to *Reichard v. Barnhart*, 285 F. Supp. 2d 728, 734 (S.D.W. Va. 2003), which stands for the proposition that, in certain circumstances, an award based on an onset date in immediate proximity to an earlier denial of benefits may warrant further administrative consideration to determine whether the favorable event should alter the initial, negative outcome on the claim.  The court reasoned that in the case before it, it could not conclude that the decisions concerning Luna were reconcilable or inconsistent.  There was only one day between the denial of the first application and the award of benefits in the second application, but the court noted Luna may have presented different medical evidence to support the two applications, or there might have been some other reason to explain the change.  Finally, Luna argued the ALJ erred in rejecting the opinions of treating and examining physicians; however, even to the extent those opinions were credited as true, the court found the issue of the disability onset date would remain unresolved. Therefore, the court determined remand was the appropriate remedy rather than an award of benefits.

In *Bruton v. Massanari*, 268 F.3d 824, 826 (9th Cir. 2001), the claimant, Bruton, filed an application on June 1, 1993, alleging disability beginning April 6, 1993.  *Id.*  On April 9, 1996, the

1   ALJ found Bruton not disabled.  *Id.*  Bruton appealed and, while his case was pending, he filed a

2   second application for benefits.  *Id*.  On February 26, 1999, another ALJ awarded Bruton benefits

3   based on his second application dating back to April 10, 1996.  *Id*.  Bruton argued in his pending

4   case that the matter should be remanded because the grant of benefits on his second application

5   constituted new and material evidence that needed to be considered in conjunction with his first

6   application for benefits.  *Id.*  The district court denied Bruton's request, and the appellate court

7   affirmed noting that the second application involved different medical evidence, a different time

8   period, and a different age classification.  *Id.* at 827

9        *Bruton* and *Luna* stand on two ends of a spectrum.  Where there is an initial denial and a

10  subsequent award of benefits that are easily reconcilable on the record before the court – e.g.,

11  because the second application involved different medical evidence, a different time period, and a

12  different age classification – then remand is not warranted pursuant to *Bruton*.  Where it is not

13  certain that the two decisions are easily reconcilable, then remand for further factual proceedings

14  may be appropriate pursuant to *Luna*.

15       Plaintiff attaches to her brief a "Notice of Award" letter of granting disability as of January

16  2012 on a subsequent application.  Plaintiff contends this constitutes new and material evidence

17  requiring remand.  The Notice of Award letter establishes only that a subsequent application for

18  benefits was granted.  The Commissioner attaches as an exhibit to her brief the details of the

19  award of benefits that was granted on February 15, 2013.  The letter indicates that a partial

20  allowance of benefits was granted based on Plaintiff's borderline age.  The decision states that,

21  although Plaintiff did not turn 55 years old until December 17, 2012, borderline age was

22  considered and applied to allow for a partial allowance of benefits from January 1, 2012, using

23  Medical Vocational Guidelines ("Grids") 202.06.  The decision explains that, at age 55, Plaintiff

24  would have been deemed disabled under the Grids based upon her existing RFC.  Because of the

25  11 limitations on her RFC, Plaintiff's borderline age was used to allow an award of benefits 11

26  months before she attained age 55, which was January 1, 2012.  (Doc. 23-1, Exhibit A, p. 1.)

27       Upon review of the basis for the subsequent disability finding, the facts of this case are

28  more closely analogous to *Bruton* than to *Luna*.  Here, the subsequent grant of benefits is based on

Plaintiff's borderline age, which the Commissioner applied to propel Plaintiff into a different age classification for purposes of assessing disability under the Grids.   There is no reasonable possibility that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application or that further consideration of the factual issues is appropriate. Plaintiff argues in her reply brief that it is "quite possible that evidence considered by the Commissioner in the subsequent claim will show that plaintiff became disabled at the sedentary exertional level on an earlier date, or that she would have been disabled under Step 3 of the [s]equential evaluation." (Doc. 24, 2:24-28.)  Yet, there is no basis to conclude that anything other than Plaintiff's age was considered in awarding benefits pursuant to the subsequent application. Under the circumstances of this case, the subsequent grant of benefits is not inconsistent with the ALJ's first decision to deny Plaintiff's application.   Therefore, the subsequent grant of benefits itself does not require remand.  *Bruton*, 268 F.3d at 827.  However, as discussed below, the ALJ's consideration of the medical evidence nonetheless requires remand.

**C.      The ALJ's Consideration of the Medical Evidence**

**1.      The ALJ Impermissibly Rejected Dr. Berrien's Opinion**

Plaintiff contends the ALJ improperly assigned weight to the state agency physicians regarding Plaintiff's ability to perform fine and gross manipulation with her hands, but discredited Plaintiff's treating physicians, Drs. Kinzie and Berrien, who opined that Plaintiff would be more restricted in her ability to perform fine and gross manipulations with her hands due to her carpal tunnel syndrome.

Plaintiff asserts the ALJ should have given weight to Dr. Kinzie's July 2011 opinion that Plaintiff was limited in the use of her hands for fine and gross manipulation.  (Doc. 18, 7:14-16.) Plaintiff argues that Dr. Kinzie is a board certified orthopedic surgeon and the limitations he opined regarding Plaintiff's hand-use were corroborated by Dr. Berrien, another treating physician.

Although Plaintiff's argument regarding Dr. Berrien's opinion is under-developed, the ALJ's failure to consider Dr. Berrien's opinion is plain on the face of the ALJ's decision.[3]  Dr.

---

[3] The Commissioner notes there are no treating records from Dr. Berrien establishing he had a treating relationship with Plaintiff; rather, it appears he was an examining physician only.

1    Berrien opined that Plaintiff was "impaired from doing fine repetitive hand functioning, grasping,

2    twisting, pushing, [or] pulling on a regular basis."   The Commissioner concedes "Dr. Berrien

3    opined that Plaintiff could engage in work that did not involve fine manipulation."  In other words,

4    Dr. Berrien opined that Plaintiff could *not* perform work that involved fine manipulation.

5         Courts in this circuit have generally concluded that "fine manipulation" is equivalent to

6    "fingering" as used in the Dictionary of Occupational Titles.  *See, e.g., Estrada v. Astrue*, No. ED

7    CV 10-1843 PJW, 2011 WL 4946568, at *3 (C.D. Cal. Oct. 18, 2011) (holding that ALJ's finding

8    that claimant can perform "occasional fine manipulation, i.e., occasional fingering, precludes her

9    from performing jobs that requires frequent fingering"); i.e., occasional fingering, precludes her

10   from performing jobs that requires frequent fingering"); *Hyston v. Astrue*, No. 3:11-cv-01173-KI,

11   2012 WL 5984655, at *7 (D. Or. Nov. 27, 2012) (finding that ALJ erred in relying on VE

12   testimony where VE failed to explain whether claimant "with a limitation in fine manipulation in

13   his dominant hand could perform the frequent fingering required by the job[] of cashier . . . .")

14        The ALJ concluded that Plaintiff could perform bilateral "fine feeling" and "gross

15   handling" on a frequent basis.  (AR 18.)  The Commissioner asserts that Dr. Berrien's opinion

16   supports the ALJ's finding that Plaintiff "could not engage in fine handling, and could engage in

17   frequent gross handling and fine feeling."  (Doc. 23, 32:6-8.)  This assertion is incorrect.  The

18   ALJ's RFC nowhere precludes Plaintiff from "fine handling."  The ALJ found only that Plaintiff

19   could frequently perform bilateral gross handling and fine feeling, which were the hypothetical

20   limitations the ALJ presented to the VE and upon which the VE's testimony was predicated.

21   (AR 18.)

22        Moreover, the ALJ never analyzed or even mentioned Dr. Berrien's opinion in the

23   decision; instead, Dr. Berrien's opinion is entirely ignored.   Therefore, it was implicitly rejected

24   without any stated basis, which constitutes error.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456

25   (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in

26   order to justify a conclusion); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per

27   curiam) (the ALJ must explain why significant probative evidence has been rejected).  The

28   Commissioner contends that Dr. Berrien's opinion was essentially adopted by the ALJ as

evidenced by Plaintiff's RFC limitations precluding Plaintiff from fine handling.  However, as set forth above, the RFC did not preclude Plaintiff from fine handling, and the ALJ made no such finding.  (*See* AR 18.)   Therefore, Dr. Berrien's opinion is not "wholly consistent" with the ALJ's RFC, as the Commissioner maintains.  Rather, Dr. Berrien's opinion that Plaintiff is precluded from "fine repetitive hand functioning . . . on a regular basis" appears to be at odds with the ALJ's finding that Plaintiff could perform "fine feeling" on a frequent basis.  (*Compare* AR 243 *with* AR 18.)

Dr. Berrien's opinion is relevant and material because the VE testified that anyone precluded from "fine manipulation" and limited to only occasional gross handling would be precluded from all employment.  (AR 51-52.)  Further, because Dr. Berrien's opinion appears to lend support to Dr. Kinzie's opinion that Plaintiff is precluded from all fine manipulation, as Plaintiff asserts, consideration of Dr. Berrien's opinion as an examining physician may alter the ALJ's consideration of the medical evidence, including the weight of Dr. Kinzie's opinion.  The Court cannot conclude that the failure to state legally sufficient reasons for rejecting the opinion of Dr. Berrien was harmless error.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless only if it is non-prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination").  As such, remand is appropriate for consideration of Dr. Berrien's opinion.

### 2.	The ALJ's Consideration of the Limitations Arising from Plaintiff's Non-Severe Conditions

Plaintiff contends that the ALJ's decision "diminishes the impact of the plaintiff's back impairment."  (Doc. 18, 8:5-6.)  Plaintiff offers limiting reasoning, asserting that she demonstrated a positive straight leg raising test, she had foot pain and seizures, and "[i]n light of this, there is little chance plaintiff could perform work at the light exertional level."  (Doc. 18, 8:6-8.)

The ALJ found that Plaintiff's back impairment was not a medically determinable impairment at Step Two.  Nevertheless, the ALJ found that Plaintiff had other severe impairments and continued through the sequential analysis.  To the extent Plaintiff is asserting the ALJ erred by failing to find her back impairment severe, such an error is only prejudicial if the ALJ failed to

1  consider that impairment in assessing Plaintiff's limitations arising out of a non-severe condition at

2  the remaining steps.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  The Commissioner

3  contends that the ALJ specifically considered Plaintiff's alleged back impairment in assessing the

4  RFC and, therefore, any error in failing to find the back impairment a severe impairment was not

5  prejudicial.  *Lewis*, 498 F.3d at 911.

6        The ALJ found Plaintiff's back condition *not* medically determinable.  (AR 17.)  The ALJ

7  had no obligation to consider limitations arising out of a condition that is not medically

8  determinable at subsequent steps of the sequential evaluation.  Further, even assuming the ALJ

9  should have found Plaintiff's back arthritis to be, at a minimum, non-severe rather than "not

10  medically determinable," Plaintiff fails to articulate any limitations arising from her back arthritis

11  that the ALJ should have considered in assessing her RFC.

12        Plaintiff's argument regarding her back arthritis is limited to three sentences with no

13  citation to the record:  "The written decision erroneously diminishes the impact of the plaintiff's

14  back impairment.  (AR 17).  Plaintiff had a positive straight leg raising test.  She had foot pain and

15  seizures.  In light of this, there is little chance plaintiff could perform work at the light exertional

16  level."  These bare medical findings do not show how Plaintiff is limited from working, nor does

17  Plaintiff present any argument how they do so.  Thus, Plaintiff has not established the ALJ erred

18  by failing to consider limitations arising out of her back condition.  *Shinseki v. Sanders*, 556 U.S.

19  396, 409 (2009) (burden is on the party attacking the agency's determination to show that

20  prejudice resulted from the error); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where

21  harmfulness of the error is not apparent from the circumstances, the party seeking reversal must

22  explain how the error caused harm.").  Nonetheless, because the ALJ must undertake renewed

23  consideration of the medical evidence, Plaintiff may present evidence and argument to the ALJ

24  regarding her back impairment on remand.

25  **D.**   **Plaintiff's Credibility**

26        The ALJ determined Plaintiff was not fully credible because her statements regarding the

27  extent of her symptoms were inconsistent with her actual abilities on examination and her

28  statements of disabling pain and limitation were not fully supported by the medical evidence.

1  (AR 19.)  Plaintiff asserts the ALJ's finding that her statements were not supported by the medical

2  evidence is legally insufficient.  (Doc. 18, 10:15-19.)

3      Because the Court remands this case for further consideration of the medical evidence, the

4  Court dispenses with an exhaustive analysis of the ALJ's credibility determination.  In light of the

5  Court's finding that the ALJ failed to properly evaluate the opinion of Dr. Berrien, and because

6  credibility determinations are inescapably linked to conclusions regarding medical evidence,

7  20 C.F.R. § 416.929, the ALJ's credibility finding is also reversed and the issue remanded.  After

8  re-evaluating the medical evidence of record, the ALJ will be in a better position to evaluate

9  Plaintiff's credibility.

10  **E.      Challenges Regarding the VE Testimony**

11      Plaintiff summarily contends that "[i]t should be noted that for the numbers cited by the

12  vocational expert, only state numbers were given."  (Doc. 18, 7:13-14.)  It is unclear whether

13  Plaintiff is asserting any error in this regard, but even if she were, the argument is without merit.

14  Testimony regarding the numbers of jobs available regionally, such as the state of California, is

15  routinely relied upon at the Fifth Step as evidence of a significant number of jobs available.  *See*

16  *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (1,300 jobs in the state of Oregon

17  substantial evidence at the Fifth Step to support non-disability finding); *Gutierrez v. Astrue*, No.

18  1:11-cv-0105-DLB, 2012 WL 259141, at *5 (E.D. Cal. Jan. 26, 2012) ("Vocational Experts often

19  state available jobs in terms of the number of positions available within California and nationwide,

20  and absent Ninth Circuit authority invalidating this approach, the Court will not [declare that the

21  State of California is not an appropriate 'region'].").  To the extent Plaintiff argues the VE's

22  testimony regarding the number of jobs available in the State of California is somehow

23  insufficient, that argument is underdeveloped, unsupported by any legal authority, and without

24  merit.

25      Additionally, to the extent the ALJ's RFC assessment is altered after consideration of Dr.

26  Berrien's opinion, new VE testimony may be required.  Therefore, the remainder of Plaintiff's

27  arguments pertaining to the VE's testimony will not be addressed.  *See Angel v. Barnhart*,

28  329 F.3d 1208, 1210 n.4 (10th Cir. 2003) ("Given the nature of our remand [for further

1    proceedings before the ALJ], we do not address [the claimant's] claim that she does not have the

2    residual functional capacity to perform her past relevant work . . . ."); *Byington v. Chater*, 76 F.3d

3    246, 250-51 (9th Cir. 1996) ("Because we find that the district court committed error and the

4    decision of the ALJ is supported by substantial evidence, we do not consider the Secretary's other

5    arguments on appeal.").

6    **G.      Plaintiff's Other Arguments**

7           In the first paragraph of Plaintiff's opening brief she asserts she should have been

8    considered disabled "under either a listing level impairment or pursuant to SSR 96-9p or the GRID

9    rules." (Doc. 18, 1:21-23.)  Nowhere in the remainder of the brief, however, are these two issues

10   addressed.  Plaintiff's passing one-sentence references to the Listings and SSR 96-9p with no

11   citation to the record is insufficient to raise any assertion of error because there is no indication

12   how the ALJ might have erred with regard to the Listings at the Third Step or the application of

13   SSR 96-9p.  *See Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054 (9th Cir. 2007)

14   (holding district court did not abuse its discretion by not addressing one-sentence arguments

15   alleging constitutional errors in request for preliminary relief); *Greenwood v. FAA*, 28 F.3d 971,

16   977 (9th Cir. 1994) (failure to present specific, cogent argument for consideration waives issue).

17   **H.      Remand Is Required**

18          "The court shall have power to enter, upon the pleadings and transcript of the record, a

19   judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

20   with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In Social Security

21   cases, the decision to remand to the Commissioner for further proceedings or simply to award

22   benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.

23   1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a

24   social security case should be remanded.  Where, however, a rehearing would simply delay receipt

25   of benefits, reversal [and an award of benefits] is appropriate."  *Id.* (alteration in original) (internal

26   quotation marks omitted).

27          Here, the ALJ erred in failing to address Dr. Berrien's medical opinion.  Dr. Berrien's

28   opinion is in apparent conflict with the non-examining physicians' opinions, but supports the

opinion of treating physician, Dr. Kinzie.  In these circumstances, it is appropriate to remand this matter for further administrative proceedings.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Sabrina Gallardo and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 28, 2014**                        **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE

23